OPINION
This is an appeal from the Warren Municipal Court, Trumbull County, Ohio. Appellant, Jeffrey F. Pollis, appeals the trial court's judgment entry finding him guilty of violating a Civil Protection Order ("CPO").
The instant matter is on the court's superaccelerated calendar. The pertinent facts concern a CPO that was created on November 18, 1997. The issue of whether to grant a CPO was delegated to the magistrate of the domestic court, who found that such an order was appropriate. In its decision, the magistrate recommended that as part of the terms and conditions of the CPO, appellant must (1) "refrain from harassing, annoying, [or] abusing Petitioner or the minor child(ren)," (2) "refrain from entering the residence, school, or business of the Petitioner or the minor child(ren)," (3) "not telephone the Petitioner at home or work, or causeanother to call on [his] behalf," and (4) "stay 500 yards away from the residence of the Petitioner." The decision further stated that the order would remain in effect until October 30, 1999. The magistrate's decision was adopted by the trial court and journalized on November 21, 1997. On the trial court's judgment entry, both appellant and the petitioner, Kelly J. Yauger ("Kelly"), expressly acknowledged receipt of the judgment by their signatures. No objections to the magistrate's decision were filed with the trial court.
On November 19, 1998, a complaint was filed against appellant for violating the CPO. The complaint was filed because appellant had allegedly made a telephone call to Kelly's residence in the early morning hours of November 15, 1998. A bench trial was held on the complaint on March 2, 1999. At the trial, Kelly testified that in the early morning hours of November 17, 1998, she was told by her daughter that appellant had called.[1] Kelly's daughter, Nicole Yauger ("Nicole"), testified that on the day in question, she received a phone call from him and immediately recognized the voice as appellant's. Nicole stated that upon hearing his voice, she gave the phone to her boyfriend, Daniel Mitchell Pelar ("Mitch"). Mitch provided testimony that he was given the phone by Nicole and the voice on the line stated that he should "watch [his] back going around with two whores." Mitch further testified that he was "pretty sure" the voice was appellant's.
Also at trial, appellee's exhibit two was admitted into evidence. Exhibit two consisted of a document titled, "Annoyance Call Bureau Trace Results." In that document, a phone trace revealed that appellant made a telephone call to Kelly's residence on November 15, 1998, at 12:56 a.m.
In a judgment entry dated March 2, 1999, the trial court found appellant guilty of violating the express terms of the CPO by making a phone call to Kelly's residence. Appellant now appeals the trial court's judgment and raises the following assignment of error:
 "The decision to find [appellant] guilty of violating a civil protection order is against the manifest weight of the evidence."
In assigning this error, appellant combines the concept of manifest weight and sufficiency of the evidence. In fact, appellant argues error on both grounds. In regard to insufficiency, appellant states that there was no evidence that he was the caller and he never violated the CPO because he did not talk to Kelly, and Nicole was no longer a minor at the time. In regard to the issue of manifest weight, appellant claims that the testimony of Nicole and Mitch was not credible enough to support a finding of guilt that he had made the phone call and spoke to them. Finally, appellant avers that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal.
As the court stated in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 10-11:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"'
 "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 "On the other hand, `manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence," (* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' * * *" (Citations omitted and emphasis sic.)
Regarding the claim of insufficiency of the evidence, the record reveals that testimony was presented at the trial before the lower court by Nicole and Mitch that appellant had telephoned Kelly's residence on November 15, 1998. Nicole stated that it was appellant's voice and Mitch stated that he was "pretty sure" it was appellant. Pursuant to Evid.R. 901(B)(5) and (6), Nicole and Mitch could properly testify to the identification of appellant's voice. Moreover, appellee's exhibit number two was properly admitted at trial and consisted of a phone trace which showed that a call was made from appellant's phone to Kelly's residence at the date and time in question. Accordingly, there was sufficient evidence for a rational trier of fact to conclude that appellant had made a phone call to Kelly's residence and spoke to Nicole and Mitch.
In reading the CPO, it is clear that the prohibition against appellant being allowed to telephone Kelly "at home or work, or cause another to call on [appellant's] behalf" was to further prevent him from harassing her. Indeed, the CPO commands appellant to not harass, annoy, or abuse Kelly or her minor children; refrain from entering the residence school or business of appellee or her minor children; not to telephone her at work or home; and to stay at least five hundred yards away from her residence.
Thus, in light of the fact that appellant was essentially ordered not to instigate any contact with Kelly, the mandate that he shall not telephone her is properly interpreted to mean that he shall not make, or cause to make, any telephone calls to Kelly's home or work, regardless of whether he actually speaks to her. To hold otherwise, would undermine the intent and purpose of the CPO. If the order was construed so narrowly as to only have effect in situations where appellant spoke to Kelly or her minor children, then he would be allowed to harass her by doing things such as repeatedly calling and hanging up or repeatedly calling and staying mute on the line when she answered, which would be an affront to the prestige and power of the trial court.
The judgment also was not against the manifest weight because the trial court, as the trier of fact, was in the position to consider the credibility of the witnesses, which will not be reversed on appeal absent an abuse of discretion. Based on the record, there was no abuse of discretion on the trial court's part in finding Nicole and Mitch to be more credible than appellant. Thus, the decision was not against the manifest weight.
Finally, based on our manifest weight and sufficiency analysis, coupled with the fact that appellant had notice of the CPO as evidenced by his signature on the judgment entry stating that he had notice of it, the trial court did not err in overruling appellant's Crim.R. 29 motion for acquittal.
For the foregoing reasons, appellant's assignment of error is without merit and the judgment of the Warren Municipal Court is affirmed.
 ______________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.
[1] Counsel for appellee continually asked his questions using the date "November 17, 1998"; however, the actual date of the phone call was November 15, 1998, as stated in the complaint and shown by the Annoyance Call Bureau Trace report.